# Colorado
## Residential Lease Agreement

This Lease Agreement (the "Agreement") is made and entered on January 01, 2019 (the "Effective Date") by and between ▮▮▮▮ (the "Landlord") and the following tenants:

▮▮▮▮

(the "Tenant")

Subject to the terms and conditions stated below the parties agree as follows:

**1. Property.** Landlord, in consideration of the lease payments provided in this Agreement, leases to Tenant a house with 3 bedrooms and 2 bathrooms, located at 5515 S. Boulder Rd, Boulder, Colorado 80303 (the "Property"). No other portion of the building wherein the Property is located is included unless expressly provided for in this Agreement.

**2. Term.** This Agreement will begin on January 01, 2019 (the "Start Date") and will terminate on January 01, 2020 (the "Termination Date"), and thereafter will be month-to-month on the same terms and conditions as stated herein, save any changes made pursuant to law, until terminated.

Tenant will vacate the Property upon termination of the Agreement, unless: (i) Landlord and Tenant have extended this Agreement in writing or signed a new agreement; (ii) mandated by local rent control law; or (iii) Landlord accepts Rent from Tenant (other than past due Rent), in which case a month-to-month tenancy will be created which either party may terminate by Tenant giving Landlord written notice of at least 30 days prior to the desired termination date, or by Landlord giving Tenant written notice as provided by law. Rent will be at a rate agreed to by Landlord and Tenant, or as allowed by law. All other terms and conditions of this Agreement will remain in full force and effect.

**3. Management.** The Tenant is hereby notified that ▮▮▮▮ is the property manager of the Property. Should the Tenant have any issues or concerns, the Tenant may contact ▮▮▮▮ by one of the methods below:

**Address:** ▮▮▮▮
**Telephone:** ▮▮▮▮
**Email:** ▮▮▮▮

**4. Rent.** Tenant will pay to Landlord rent in the amount of **$1,350.00** (the "Rent"), payable in advance on the 1st day of each month, and is delinquent on the next day. If that day falls on a weekend or legal holiday, the rent is due on the next business day. There will be no rent increases through the initial term of the lease. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

**Payments should be sent to:**

Payment address: ███████████████████████ or at such other place as Landlord may designate from time to time.

**Payments can be made by using one of the following methods of payment:**

Acceptable forms of payment:

- Personal check
- Money order
- Cashier's check
- Cash

Tenant agrees to submit rent payments by one of the methods above. In the event of roommates, or another form of joint or multiple occupancy, Tenant will be responsible for collecting payment from all parties and submitting a single payment to Landlord. Tenant is responsible for any payment made by mail and not received by the due date stated herein. Mailed payments must be received on or before the due date. Rent payments for any partial month will be pro-rated at the rate of 1/30th of the monthly rent payment per day.

**5. Security Deposit.** At the time of signing this Agreement, Tenant must pay to Landlord a security deposit in the amount of **$1,350.00** (the "Security Deposit"). Landlord may use therefrom such amounts as are reasonably necessary to remedy Tenants' default in the payment of rent, repair damages to the Property exclusive of ordinary wear and tear, and to clean the Property if necessary. Landlord will refund Tenants the balance of the security deposit after such deductions.

**6. Non-Sufficient Funds.** Tenant will be charged a monetary fee of $50.00 as reimbursement of the expenses incurred by Landlord for each check that is returned to Landlord for lack of sufficient funds. In addition, a check returned due to insufficient funds will be subject to any and all late payments provisions included in this Agreement (if any). All charges will be immediately due from Tenant and failure to make immediate payment will constitute a default under the terms of this Agreement.

Landlord reserves the right to demand future payments by cashier's check, money order or certified funds on all future payments in the event of a check returned for insufficient funds. Nothing in this paragraph limits other remedies available to the Landlord as a payee of a dishonored check. Landlord and Tenant agree that three (3) returned checks in any 12 month period constitutes frequent return of checks due to insufficient funds and may be considered a just cause for eviction.

**7. Late Payments.** In the event that any payment required to be paid hereunder by Tenant is not made within 3 days of when due, Tenant will pay to Landlord, in addition to such payment or other charges due hereunder, a "late fee" in the amount of $150.00.

**8. Failure to Pay.** Tenant is hereby notified that a negative credit report reflecting on Tenant's credit history may be submitted to a credit reporting agency if Tenant fails to fulfill the terms of their credit obligations, such as their financial obligations under the terms of this Agreement.

**9. Occupants.** The only persons who may live on the Property during the term of this Agreement are:

- 
- _____

Tenant may have guests on the Property for not over 15 consecutive days or 0 days in a calendar year, and no more than two guests per bedroom at any one time. Persons staying more than 15 consecutive days or more than 0 days in any calendar year will NOT be considered original occupants of the Property. Tenant must obtain the prior written approval of Landlord if an invitee of Tenant will be present at the Property for more than 15 consecutive days or 0 days in a calendar year.

**10. Possession.** Tenant will be entitled to possession of the Property on the first day of the term of this Agreement, and will yield possession to Landlord on the last day of the term of this Agreement, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant will remove its goods and effects and peaceably yield up the Property to Landlord in as good a condition as when delivered to Tenant, ordinary wear and tear excepted.

**11. Use of Property/Absences.** Tenant will occupy and use the Property as a full-time residential dwelling unit. Tenant will notify Landlord of any anticipated extended absence from the Property not later than the first day of the extended absence.

No retail, commercial or professional use of the Property is allowed unless the Tenant receives prior written consent of the Landlord and such use conforms to applicable zoning laws. In such case, Landlord may require Tenant to obtain liability insurance for the benefit of Landlord. Landlord reserves the right to refuse to consent to such use in its sole and absolute discretion.

The failure to abide by the provisions of this section will constitute a material breach of this Agreement and is a just cause for eviction.

**12. Appliances.** The following appliances will be provided by Landlord:

- Stove
- Refrigerator
- Dishwasher
- Microwave oven
- Washer
- Dryer

Tenant will return all such items at the end of the term in a condition as good as existed at the beginning of the lease term, normal wear and tear excepted.

**13. Storage.** No additional storage space on the Property is authorized, permitted or provided.

**14. Parking.** This Agreement does not include or provide for parking spaces for motor vehicles or motorcycles anywhere in or about the Property.

**15. Roof/Fire Escapes.** Use of the roof and/or the fire escapes by Tenants and/or guests is limited to emergency use only. No other use is permitted, including but not limited to, the placement of personal property.

**16. Pets.** Tenant is not allowed to keep any animals or pets on or about the Property without Landlord's prior written consent, except for the following:

   **Number of pets allowed:** 3

   **Type of pets allowed:**

- Dog
- Cat
- Fish

- Bird
- Reptile

  **Weight limit for each pet:** No weight limit.

In addition, Tenant will be required to pay an additional pet deposit in the amount of $200.00. Tenant will be responsible for all costs that are reasonably necessary to remedy any damage to the Property which may be a result of any animal or pet. Landlord will refund Tenant the balance of the Security Deposit after such deductions.

**17. Keys and Locks.** Tenant will be given a set number of keys for the Property. If all keys are not returned to Landlord following termination of the Agreement, Tenant will be charged a monetary fee to replace the keys. If a security deposit was collected by the Landlord at the time of signing this Agreement, then such amount will be subtracted from the Security Deposit. Tenant is not permitted to change any lock or place additional locking devices on any door or window of the Property without Landlords approval prior to installation. If allowed, Tenant must provide Landlord with keys to any changed lock immediately upon installation.

**18. Smoking.** Smoking is prohibited in any area in or on the Property, both private and common, whether enclosed or outdoors. This policy applies to all owners, tenants, guests, employees, and servicepersons. The Tenant will be liable for any damages caused to the Property due to Tenant or Tenants visitors or guests smoking in or on the Property. Any violation of this policy will be seen as a breach of this Agreement and Landlord will be entitled to all remedies allowable by law including eviction.

**19. USE OF MARIJUANA NOTICE:** The State of Colorado's Amendment 64 legalizes the cultivation and possession and use of marijuana by persons 21 years of age or older. Despite Amendment 64, the federal Controlled Substances Act remains in effect in the State of Colorado. This Act categorizes marijuana as an illegal Schedule 1 substance, the possession, distribution or manufacture of which is a criminal federal offense. Any and all use, cultivation or possession of marijuana on the Premises, INCLUDING USE OF MEDICINAL MARIJUANA, is strictly forbidden and shall constitute a default of this Lease. This policy applies to the Tenant or Tenants and all visitors, guests, employees or any other person on the Premises. This is compliant with the United States Department of Housing and Urban Development's findings that federal and state non-discrimination laws does not require the Landlord to accommodate requests to use, possess or cultivate medical marijuana from current or prospective tenants with disabilities.

**20. Maintenance and Repairs.** Landlord will have the responsibility to maintain the Property in good repair at all times and perform all repairs necessary to satisfy any implied warranty of habitability. Except in an emergency, all maintenance and repair requests must be made in writing

and delivered to Landlord or property manager. A repair request will be deemed permission for the Landlord or property manager to enter the Property to perform such maintenance or repairs in accordance with this Agreement unless otherwise specifically requested, in writing, by Tenant. Tenant may not place any unreasonable restrictions upon Landlord or property manager's access or entry. Landlord will have expectation that the Property is in a safe and habitable condition upon entry

**21. Utilities and Services.** Tenant will pay directly for all utilities, services, and charges provided to the Property, including any and all deposits required.

**22. Default.** Tenant will be in default of this Agreement if Tenant fails to comply with any material provisions of this Agreement by which Tenant is bound. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation (or any other obligation) after written notice of such default is provided by Landlord to Tenant, Landlord may elect to cure such default and the cost of such action will be added to Tenant's financial obligations under this Agreement. All sums of money or charges required to be paid by Tenant under this Agreement will be additional rent, whether or not such sums or charges are designated as "additional rent." The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**23. Termination upon Sale of Property.** Notwithstanding any other provision of this Agreement, Landlord may terminate this Agreement upon 45 days' written notice to Tenant that the Property has been sold.

**24. Holding Over.** Should the Tenant hold over the term hereby created with consent of the Landlord, the term of this lease will become a month-to-month tenancy and be deemed to be and be extended at the rental rate herein provided, and otherwise upon the terms and conditions in this Agreement, until either party hereto serves upon the other thirty (30) days written notice of termination, reflecting the effective date of cancellation.

**25. Military Termination.** In the event, the Tenant is, or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant receives permanent change of station orders to depart from the area where the Property is located, or is relieved from active duty, retires or separates from the military, or is ordered into military housing, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant will also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change, which warrants termination under this provision. The Tenant will pay prorated rent for any days (he/she) occupy the dwelling past the first day of the month. Any security deposit will be promptly returned to the Tenant, provided there are no damages to the Property.

**26. Condition of Property.** Tenant stipulates, represents and warrants that Tenant has examined the Property, and that it is at the time of this Agreement in good order, repair, and in a safe, clean and tenantable condition.

**27. Alterations and Improvements.** Tenant will make no alterations to the buildings or improvements to the Property or construct any building or make any other improvements on the Property without the prior written consent of Landlord. Any and all alterations, changes, and/or improvements built, constructed or placed on the Property by Tenant will, unless otherwise provided by written agreement between Landlord and Tenant, be and become the property of Landlord and remain on the Property at the expiration or earlier termination of this Agreement.

**28. Hazardous Materials.** Tenant will not keep on the Property any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Property or that might be considered hazardous or extra hazardous by any responsible insurance company.

**29. Lead Disclosure.** Many homes and apartments built before 1978 have paint that contains lead (called lead-based paint). Lead from paint chips and dust can pose serious health hazards if not taken care of properly. Federal law requires that tenants and lessees receive certain information before renting pre-1978 housing. By signing this Agreement, Tenant represents and agrees that Landlord has provided Tenant with such information, including, but not limited to, the EPA booklet entitled *Protect Your Family from Lead in Your Home.*

**30. Damage to Property.** If the Property is damaged or destroyed as to render it uninhabitable, then either Landlord or Tenant will have the right to terminate this Agreement as of the date on which such damage occurs, through written notice to the other party to be given within 20 days of occurrence of such damage. However, if such damage should occur as the result of the conduct or negligence of Tenants or Tenants' guests or invitees, Landlord will have the right to termination and Tenants will be responsible for all losses, including, but not limited to, damage and repair costs as well as loss of rental income.

**31. Landlord Access to Property.** Landlord and Landlord's agents will have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Property for the purpose of inspecting the Property and all buildings and improvements thereon. Tenant will make the Property available to Landlord or Landlord's agents for the purposes of making repairs or improvements, or to supply agreed services or show the Property to prospective buyers or tenants, or in case of emergency. Except in case of emergency, Landlord will give Tenant reasonable notice of intent to enter. For these purposes, twenty four (24) hour written notice will be deemed reasonable.

**32. Indemnity Regarding Use of Property.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, including reasonable attorney fees, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Property, except Landlord's act or negligence. Tenant hereby expressly releases Landlord and/or agent from any and all liability for loss or damage to Tenant's property or effects whether on the Property, garage, storerooms or any other location in or about the Property, arising out of any cause whatsoever, including but not limited to rain, plumbing leakage, fire or theft, except in the case that such damage has been adjudged to be the result of the gross negligence of Landlord, Landlord's employees, heirs, successors, assignees and/or agents.

**33. Accommodation.** Landlord agrees to and is committed to complying with all applicable laws providing equal housing opportunities. To ensure compliance, Landlord will make reasonable accommodations for the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or a tenant, unless undue hardship would result. It is the applicant or tenant's responsibility to make Landlord aware of any required accommodation. In writing, the individual with the disability should specify the nature and effect of the disability and any accommodation he or she needs. If after thoughtful consideration and evaluation, the accommodation is reasonable and will not impose an undue hardship, Landlord will make the accommodation. Landlord reserves the right to require appropriate medical verification of the disability.

**34. Compliance with Regulations.** Tenant will promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters. However, Tenant will not by this provision be required to make alterations to the exterior of the building or alterations of a structural nature.

**35. Mechanics Liens.** Neither Tenant nor anyone claiming through the Tenant will have the right to file mechanics liens or any other kind of lien on the Property and the filing of this Agreement constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens will not be valid, and (2) take whatever additional steps that are necessary in order to keep the Property free of all liens resulting from construction done by or for the Tenant.

**36. Subordination of Lease.** This Agreement is subordinate to any mortgage that now exists, or may be given later by Landlord, with respect to the Property.

**37. Assignment and Subletting.** Tenant may not assign or sublease any interest in the Property, nor assign, mortgage or pledge this Agreement, without the prior written consent of Landlord, which will not be unreasonably withheld.

**38. Habitability.** Tenant has inspected the Premises and fixtures (or has had the Premises inspected on behalf of Tenant), and acknowledges that the Premises are in a reasonable and acceptable condition of habitability for their intended use, and the agreed lease payments are fair and reasonable. The Colorado Warranty of Habitability Law obliges the Landlord to substantially meet the following statutory requirements:

The Premises must have a waterproof and weather protected roof and exterior walls maintained in good working order, including unbroken doors and windows;

The Premises must have water and gas plumbing, maintained in good working order, and which conformed to the law at time of installation;

The Premises must have running water and reasonable amounts of hot water, connected through a legally approved sewage disposal system;

The Premises must have a functional heating system, maintained in good working order, and which conformed to the law at time of installation;

The Premises must have electric lighting, with all wiring and electrical equipment in good working order, and which conformed to the law at the time of installation;

The Premises' common areas under the control of the Landlord must be kept reasonably clean, sanitary and free of accumulated debris, filth and garbage as well as have sufficient extermination in response to vermin or rodent infestations;

The Premises must have appropriate extermination in response to vermin or rodents;

The Premises must have sufficient exterior receptacles for refuse or trash, in good working order;

The Premises' stairs, hallways and floors must be maintained in good repair;

All of the Premises' locks on exterior doors and locks or security mechanisms on windows designed must be in good working order; and

The Premises must comply with all applicable building, housing and health codes which, if violated, would constitute a condition that is dangerous or hazardous to the Tenant's or Tenants' life, health, or safety.

**39. Notice.** Notice under this Agreement will not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed to the party at the appropriate address set forth below. Such addresses may be changed from time to time by either party by providing notice as set forth below. Notices mailed in accordance with these provisions will be deemed received on the third day after posting.

**Landlord:**

[redacted]

**Tenant:**

5515 S. Boulder Rd, Boulder, Colorado 80303

Such addresses may be changed from time to time by any party by providing notice as set forth above.

**40. Attorney's Fees.** Should it become necessary for Landlord to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Property, Tenant agrees to pay all expenses so incurred, including a reasonable attorney's fee.

**41. Dispute Resolution.** The parties will attempt to resolve any dispute arising out of or relating to this Agreement through friendly negotiations amongst the parties. If the matter is not resolved by negotiation, the parties will resolve the dispute using the below Alternative Dispute Resolution (ADR) procedure:

Any controversies or disputes arising out of or relating to this Agreement will be submitted to mediation in accordance with any statutory rules of mediation for the State of Colorado. If mediation does not successfully resolve the dispute, the parties may proceed to seek an alternative form of resolution in accordance with any other rights and remedies afforded to them by law.

**42. Governing Law.** This Agreement will be governed, construed and interpreted by, through and under the Laws of the State of Colorado.

**43. Waiver and Severability.** The failure of either party to enforce any provisions of this Agreement will not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement. If any provision of this Agreement or the application thereof will, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances will be affected thereby, but instead will be enforced to the maximum extent permitted by law.

**44. Time of Essence.** Time is of the essence with respect to the execution of this Lease Agreement.

**45. Estoppel Certificate.** Tenant will execute and return a tenant estoppel certificate delivered to Tenant by Landlord or Landlord's agent within three (3) days after its receipt. Failure to comply with this requirement will be deemed Tenant's acknowledgment that the estoppel certificate is true and correct, and may be relied upon by a lender or purchaser.

**46. Entire Agreement.** This document constitutes the entire Agreement between the Tenant and Landlord. This Agreement cannot be modified except in writing and must be signed by all parties. Neither Landlord nor Tenant have made any promises or representations, other than those set forth in this Agreement and those implied by law. The failure of Tenant or its guests or invitees to comply with any term of this Agreement is grounds for termination of the tenancy, with appropriate notice to Tenants and procedures as required by law.

**47. Application.** Tenant represents and warrants that all statements in Tenant's rental application are accurate. Any misrepresentations will be considered a material breach of this Agreement and may subject Tenant to eviction. Tenant authorizes Landlord and any broker to obtain Tenant's credit report periodically during the tenancy in connection with the modification or enforcement of this Lease. Landlord reserves the right to terminate this Agreement (i) before occupancy begins, (ii) upon disapproval of the credit report(s), or (iii) at any time, upon discovering that information in Tenant's application is false.

**48. Binding Effect.** The provisions of this Agreement will be binding upon and inure to the benefit of parties and their respective legal representatives, successors and assigns.

**Receipt**

Initials

Tenant       Landlord

| | | | |
|---|---|---|---|
| Security Deposit: | $1,350.00 | _____ | _____ |
| Pet Deposit: | $200.00 | _____ | _____ |
| Prorated rent for the Period: | $ | _____ | _____ |
| Prepaid rent for the Period: | $ | _____ | _____ |
| Other Charges or Deposits: | $ | _____ | _____ |
| Total Charges Received: | $1,550.00 | _____ | _____ |

This Colorado Lease Agreement is executed and agreed to by:

▇▇▇▇▇▇▇▇▇▇▇▇                                          ▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇                                             ▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇@gmail.com                                    ▇▇▇▇▇▇@outlook.com
April 04, 2019 at 09:58 am                            April 04, 2019 at 09:59 am
Recorded at IP 172.56.20.107                          Recorded at IP 172.56.20.107

# Lease Agreement
# Inspection Checklist

**Address:**   5515 S. Boulder Rd, Boulder, Colorado 80303

Tenant has inspected the Property and states that the Property is in satisfactory condition, free of defects, except as noted below:

**Satisfactory**       **Comments**

### Kitchen

| Item | Satisfactory | Comments |
|---|---|---|
| Cupboards | _____ | _____ |
| Floor ceiling | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Counter surfaces | _____ | _____ |
| Stove and oven | _____ | _____ |
| Refrigerator | _____ | _____ |
| Garbage disposal | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |

### Living Room

| Item | Satisfactory | Comments |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |

### Bathroom

| Item | Satisfactory | Comments |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Shower and tub | _____ | _____ |
| Toilet | _____ | _____ |

| | | |
|---|---|---|
| Plumbing fixtures | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |
| Sink | _____ | _____ |
| Vanity | _____ | _____ |
| Medicine cabinet | _____ | _____ |

### Bathroom

| | | |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Shower and tub | _____ | _____ |
| Toilet | _____ | _____ |
| Plumbing fixtures | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |
| Sink | _____ | _____ |
| Vanity | _____ | _____ |
| Medicine cabinet | _____ | _____ |

### Hallways or Other Areas

| | | |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Closets | _____ | _____ |
| Light fixtures | _____ | _____ |
| Furnace | _____ | _____ |
| Air conditioner | _____ | _____ |
| Patio or deck | _____ | _____ |
| Yard | _____ | _____ |
| Other (specify) | _____ | _____ |

### Bedroom

| | | |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Closet | _____ | _____ |

| | | |
|---|---|---|
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |

**Bedroom**

| | | |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Closet | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |

**Bedroom**

| | | |
|---|---|---|
| Floor covering | _____ | _____ |
| Walls and ceiling | _____ | _____ |
| Closet | _____ | _____ |
| Windows | _____ | _____ |
| Doors | _____ | _____ |
| Light fixtures | _____ | _____ |

**Tenant:**

By: _____ Date: _____

[REDACTED]

**Acknowledged by Landlord:**

By: _____ Date: _____

[REDACTED]

# Lease Agreement
## Disclosure of Information on Lead-Based Paint or Lead-Based Paint Hazards

**Lead Warning Statement**

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, landlords must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Tenants must also receive a federally approved pamphlet on poisoning prevention.

**Landlord's Disclosure**

(a) Presence of lead-based paint and/or lead-based paint hazards (Check (i) or (ii) below):

(b) Records and reports available to the landlord (Check (i) or (ii) below):

    (i) \_\_\_\_\_ Landlord has provided the Tenant with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents):

    _____

    (ii)\_\_ X \_\_ Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Tenant's Acknowledgment (initial)**

(c) \_\_\_\_\_ Tenant has received copies of all information listed above.

(d) \_\_\_\_\_ Tenant has received the pamphlet *Protect Your Family From Lead In Your Home* .

**Agent's Acknowledgment (initial)**

\* The term Agent is defined as any party who enters into a contract with the Landlord, including anyone who enters into a contract with a representative of the Landlord for the purpose of leasing housing.

(e) \_\_\_\_\_ Agent has informed the landlord of the landlord's obligations under 42 U.S.C. 4852(d) and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Acknowledged and signed by:

April 04, 2019 at 09:58 am                                     April 04, 2019 at 09:59 am