IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.    20-cr-00245-RBJ

UNITED STATES OF AMERICA,

     Plaintiff,

v.

SHAWN MICHAEL VENCEL

     Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REOPEN
DETENTION HEARING PURSUANT TO 18 U.S.C. § 3142(f) AND FOR RELEASE
FROM CUSTODY ON CONDITIONS AND REQUEST FOR HEARING [ECF NO. 40]**

---

In July the government filed a detailed brief in support of detention in this case, citing the defendant's execution a long-running predatory identity theft scheme undeterred by supervision, arrests, or other interventions, his stated desire to flee, his demonstrated ability to manufacture identity documents and controlled substance prescriptions, the overwhelming weight of the evidence, and the defendant's skillful efforts to manipulate law enforcement in an attempt to avoid accountability.   ECF No. 14 (the Original Gov't Motion).    The defendant responded that he should be released to a halfway house with extensive conditions so that he could get treatment for a medical condition.   ECF No. 16 (the "Old Brief").    After extensive argument on these points, the Court found that the defendant is a flight risk *and* a danger to the community.   ECF No. 29; Detention Hearing Transcript at 31 ("Det. Tr.").    Now, just before the defendant is scheduled to get the treatment that caused such concern, he has filed a motion to reopen the proceedings that also argues he should be released to a halfway house because of concerns over

1

his treatment.   ECF No. 40 (the "New Brief").   The New Brief presents no new information casting doubt on the substantial risk that the defendant will do what he said he would try to do — flee the jurisdiction — or that he would not immediately return to doing what he did while under state supervision — continue to prey on identity theft victims whose lives have been already been upended by his greed and self-regarding behavior.   For these reasons, and for the reasons described in more detail below, the Court should deny the motion without a hearing.

1.      **Governing Legal Principles**

A.      <u>The Standard for Reopening the Detention Hearing</u>

The Court has already found by clear and convincing evidence that there are no conditions that will keep the defendant's victims or the community safe.   It also found by a preponderance of the evidence that there are no conditions that will ensure the defendant appears in these proceedings.   Det. Tr. at 33.

The law treats these findings with the seriousness they deserve:   a defendant is not entitled to reopen the issue of his detention without good reason.   Otherwise, continuous requests for release and repeated hearings would quickly overwhelm any substantive motions related to the crimes at issue.   As the defendant thus correctly recognizes, the law allows for the reopening of the detention hearing only if the court finds (1) that "information exists that was not known to the movant at the time of the hearing" (the "New Information" requirement) and (2) that the new information has a "material bearing on whether there are conditions of release" (the "Materiality Requirement") that will reasonably assure the defendant's appearance and the safety of others.   18 U.S.C. § 3142(f).   These twin requirements should construed strictly.   *United States v. Bothra*, 2020 WL 2611545, at *1 (6th Cir. 2020).

Section 3142 requires new *information*, not just new arguments about information that was already known and available to the defendant at the earlier hearing.   *See, e.g., United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (concluding that testimony from family about facts already known as not new *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (same); *United States v. Ward*, 235 F. Supp. 2d 1183, 1185 (N.D. Ok. 2002) (knowledge that witnesses are now willing to testify is not "new"); *cf United States v. Maloy*, 2020 WL 1333286, at *1 (D. Colo. March 23, 2020) (Wang, M.J.) (finding that government did not present new evidence where it did not seek appeal of initial release order and instead re-argued its case for detention).

Similarly, even if the information is actually something that the defendant could not have known at his first detention hearing the new information must still be "material."   The detention statute itself does not define "material," but the concept is a legally familiar one.   A material fact is a fact that "has a natural tendency to influence or [is] capable of influence, the decision of the decisionmaking body to which it was addressed."   Tenth Circuit Pattern Jury Instruction No. 2.56, cmt. (2011 Ed. Updated Feb. 2018) (citing, among other cases, *United States v. Gaudin*, 515 U.S. 506, 509 (1995)).   COVID-19, as a generalized risk that applies to everyone, is not a material change in circumstances.   *United States v. Rowe-Hodges*, 454 F. Supp. 618, 620 (E.D. Tex. 2020) (reasoning that if were otherwise, almost every pre-trial defendant would have to be released); *United States v. Lake*, 2020 WL 1852435, at *2 (D. Colo. April 13, 2020) (Crews, M.J.) (denying motion where defendant argued that the emergence of COVID, when combined with his asthma, constituted a material change in the circumstances made him less of a danger).

The New Information and Materiality requirements are threshold issues that must be evaluated before any new detention hearing is held.   *United States v. Dermen*, 779 F. Zpp'x 497,

501 (10th Cir. 2019) (finding no error in District Court's refusal to reopen detention hearing where defendant's motion rehashed argument and evidence presented in initial motion).

    B.    <u>"Temporary" Release under 18 U.S.C. § 3142(i)</u>

Section 3142(i) likewise only permits a detained defendant to be release if two requirements are met.   First, release under this section must, by its plain terms, be "temporary." *Bothra*, 2020 WL 2611545, at *2 (noting that defendant did not ask for an end date on release in district court and that subsequently-asked for timeline was not tailored to his specific concerns)

Second, any temporary release is allowed only as "necessary" to prepare a defense or for another "compelling" reason.   The defendant has the burden of showing that his circumstances rise to the level of compelling.   *United States v. Scarborough*, 821 F. App'x 598, 600 (6th Cir. 2020).

The statute offers no further guidance as to what is or is not compelling.   The case law construing the statute is sparse, but the precedents that do exist have been summarized as granting release "only sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries."   *Bothra*, 2020 WL 2611545, at *2; *see, e.g., United States v. Clark*, 448 F. Supp. 3d 1152, 1155 (D. Kan. 2020) (citing as examples of release under 3142(i) cases in which defendants sustained gunshot wounds or had terminal diseases).

Although not without some early dissent, the vast majority of courts have concluded that the mere existence of COVID, by itself, is not a compelling reason for release.   *Cf. United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (noting that mere existence of COVID-19 in sociality and the possibility of its spread in prisons did not, by itself, independently justify compassionate

release).   Instead, a defendant must show why his specific circumstances, in the context of the pandemic, justify his release.

Courts consider whether a specific defendant's COVID-19 risks rise to the level of "compelling" have used the following four factors:   (1) the original grounds of the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which his proposed release plan is tailored to mitigate or exacerbate other COVID-19 risk to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.   *Scarborough*, 821 F. App'x at 599; *Lake,* 2020 WL 1852435 at *3.

C.    <u>Legal Standard — the Bail Reform Act</u>

If the Court does determine that the defendant has met the New Information and Materiality requirements and reopens the hearing, the legal standard governing the proceeding is the same one set forth in the Original Government Motion, ECF No. 14, set forth again below for convenience.

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the defendant's detention pending trial.   The law presumes that some categories of defendants — such as those charged with crimes involving guns, violence, and drugs — should be detained.    18 U.S.C. § 3142(f)(1). There is no such presumption for cases like this one, where the defendant is charged with mail fraud.    18 U.S.C. § 3142(f).   However, contrary to the representation made by defense counsel at the initial appearance on July 14, 2020, the criteria for detention are the same regardless of whether the defendant is covered by 3142(f)(1) or (f)(2).    Before those sub-sections of the statute, 3142(f) clearly states that the judge presiding over a detention hearing is required to determine whether there are no conditions or combinations of conditions that will reasonably (1)

5

assure the appearance of the person *and* (2) the safety of any other person and the community. This conclusion is reinforced in § 3142(e), which repeats that the presiding judge should detain a person who poses either of those risks.   *See United States v. Reynolds*, 956 F.3d 192 (9th Cir. 1992) (holding that "danger may, at least in some circumstances, encompass pecuniary or economic harm"); *United States v. Madoff*, 586 F. Supp. 2d 240, 252-253 (S.D.N.Y. 2009) (extensively discussing the issue and concluding that § 3142 permits detention on basis that prospect of further economic harm by defendant is a danger that can support pretrial detention).

A finding of risk of flight must be supported by a preponderance of the evidence and a finding of danger to the community must be supported by clear and convincing evidence.   18 U.S.C. § 3142(f); *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

The Bail Reform directs that four factors be considered in the detention analysis: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including, among other things, the person's family ties, financial resources, length of residence in the community, and whether the defendant was under supervision when he committed the alleged offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**2.    The Court Should Not Reopen the Detention Hearing Because the Defendant has Not Presented Any New Information with a Material Bearing on the Issue Whether There are Conditions of Release That Will Reasonably Assure the Appearance of the Defendant And the Safety of Other Persons and the Community**

A.    <u>Information about the Defendant's Medical Condition, the COVID-19 Pandemic, and the Defendant's Many Executions of an Identity Fraud Scheme is not New</u>

The New Brief repackages arguments in the Old Brief about known conditions as new

information.   They are not.   The Court can and should deny the motion on this ground alone.
The table below identifies the arguments/facts raised in the Old Brief and the corresponding
arguments/facts raised in the New Brief:

| Old Brief / Argument | New Brief |
|---|---|
| Defendant's need for medical treatment requires release.   Old Brief at 1, 4-7; Det. Tr. at 13-15. | Defendant needs treatment and will not get it until December 11, 2020; Defendant is not getting his preferred medicine[1] |
| Defendant's participation in counseling and therapy support release.   Old Brief at 2; Det. Tr. at 21 | Defendant has participated in drug treatment and managed to remain clean.   New Brief at 13. |
| Defendant's maintenance of sobriety supports release.   Old Brief at 2; Det. Tr. at 21 | Defendant has participated in drug treatment and managed to remain clean.   New Brief at 13. |
| Defendant's willingness to reside at halfway house, among many other conditions, is sufficient.   Old Brief. at 8; Det. Tr. at 22[2] | "He requests release to a halfway house with additional conditions as required by this Court."   New Br. at 13. |
| Defendant would not leave his daughter. Det. Tr. at 17 | Defendant has a daughter.   New Brief at 13. |

---

[1] The New Brief complained that he was not getting his treatment; however defense counsel filed a supplement confirming that the defendant is, indeed, scheduled to have the treatment next week.   ECF No. 43   Although the defendant is thus scheduled to get the treatment that he needs, defense counsel's supplement does not withdraw the motion.   This is evidence that the motion to reopen is not actually based on materially new events and is, instead, just a renewed and generalized request for release untethered from any of the 3142 factors.   The Old Brief argues that he should be released because he would not get necessary treatment in custody and would be better able to get it on release.   The New Brief and its supplement inverts this logic, arguing that he should be released even though he *is* going to get the treatment in custody, with no accounting of how will get the treatment on his own.   That is, whether he is scheduled to get the treatment or not has a demonstrably negligible impact on the defendant's assessment of whether he should be released:

[2] The New Brief states that prior defense counsel asked for release to Vencel's father. New Brief at 13.   As the Court can verify for itself, the Old Brief actually argued that confinement at a halfway house would be among the conditions allowing release under 3142. Old Brief. at 8 (fourth hash mark).

| Old Brief / Argument | New Brief |
|---|---|
| "He's also posted surety —sureties in numerous cases, again further incentives for Mr. Vencel to comply and not to flee because those sureties have been posted, large amounts, in those cases." Det. Tr. 23. | "He is on surety bonds [sic] the other listed cases . . . Hence, he stands to lose a lot if he does not appear."   New Br. at 12. |

The Court fully considered each of these arguments, all of the relevant factors identified in 18 U.S.S § 3142 and concluded that no conditions or combinations of conditions would both protect the community and assure the defendant's appearance.

The Court did note that the parties should be "prepared to address whether or not he can get the treatment that he needs within . . . custody."   Det Tr. at 33.   The record submitted by the defendant shows that he *is* getting that treatment:   it documents the relevant visits and medical judgments going back to September.   In fact, the defendant's supplement candidly admits that the defendant's procedure is scheduled to go forward.   ECF no. 43.   The other issue, related to the defendant's preferred "PuriLens" solution has also been addressed:   the defendant's case manager has informed the government that the defendant was given that solution earlier this week and that more has been ordered.   Even if this were not the case, the defendant provides no evidence that the prior solution was medically improper or otherwise substandard.   The fact that the defendant did not get the brand of product he preferred is not grounds for release.[3]

---

[3] The Court directed the parties to undertake a good faith analysis as to whether or not the defendant can get the treatment he needs.   The government has done more than that.   It diligently sought information about the defendant's appointments, clearly communicated to prior defense counsel that it would work to resolve any issues related to treatment and, even when new counsel was appointed, immediately relayed to the concern about the eye solution to the defendant's case manager.   Unfortunately, the defendant's case manager was afflicted by COVID-19 shortly after that concern was relayed.   That issue has now been addressed, in the most timely manner possible given the circumstances.

8

Even if issues related to the treatment were actually "new," the defendant does not explain how they alter the 3142 analysis in a material way.   Indeed, the New Brief does not challenge the circumstances of the offense demonstrating the defendant's repeated efforts to manipulate law enforcement, his family, and his victims *while on supervision* to continuously and unrepentantly enrich himself at considerable harm to others (§3142(g)(1)); the weight of the evidence supporting the defendant's guilt (§ 3142(g)(2)); the defendant's history of substance abuse, conviction for felony eluding, the threats he has made to himself, and his demonstrated capacity for guile (§ 3142(g)(3)); or, perhaps most importantly, the real risk that the defendant continues to use the personal identifying information (PII) of his multiple victims — or the PII of others he is able to obtain using his expertise at sourcing that information — to continue harming them and/or gathering the resources he needs to flee the jurisdiction and hide by impersonating someone else (§ 3142(g)(4)).   Original Gov't Motion at 2-4, 6-16.   The government incorporates and re-states all of those arguments and relevant attachments, as supplemented by the oral argument, here.

The fact that state cases against the defendant have been dropped is new, but immaterial. The defendant executed his scheme — which involved stealing the identities of at least three people and then defrauding more than a dozen victims — in multiple overlapping city and county jurisdictions.   That generated multiple cases.   Those multiple state cases can all be charged in federal court as part of the same overarching scheme or as part of multiple schemes. That has not occurred as a result of good-faith plea discussions between the government and the defendant's prior defense counsel.[4]   The fact that state jurisdictions — knowing their charges

---

4 The current indictment is narrow.   However, as the government stated in its original

are but scattered pieces of the bigger federal case —have dropped their respective charges does not change the defendant's overall criminal exposure. He has just as much incentive to flee from being held accountable in one massive federal case as he did to flee thirteen or more smaller state cases.

The fact that the defendant has not appeared in Boulder County because of his detention in federal court might also be considered "new." But it is also immaterial.   First, defendant cites no authority for the proposition that the federal government must honor writs related to a state proceeding that might interfere with a federal one.   Second, and just as important, the defendant does not articulate why this fact has any bearing on the 3142 factors.

In short, the defendant wants release for substantially the same reasons articulated in July.   He was a flight risk and a danger then; he has not presented newly material information showing that he is less so now.   The fact that detention has kept everyone safe and prevented him from fleeing is proof that detention was the right decision, not proof that he has been reformed and should be released.   Moreover, the argument that his medical needs somehow support release is *less* compelling now than it was in July.   In July, defense counsel argued that he would not be able to get treatment in custody or that, at the very least, there were substantial concerns over whether he could get that treatment. As the defendant's own records and supplement show, he *is* getting that treatment.   If the concern is whether that treatment will

_____

brief and as defense counsel can see from the extensive discovery, the defendant's relevant conduct is much broader and additional charges are expected.   Those charges have not yet been brought as a result of good-faith efforts by the government to avoid complicating plea discussions with prior defense counsel, as well as the current general order cancelling all grand juries.   The defendant should not be allowed to ask the government to refrain from filing additional charges while engaging in good-faith plea discussions and then use the fact that no additional charges have been brought as a "new" circumstance warranting release.

occur, the defendant's motion does not articulate with any specificity how *release* would actually accomplish that goal, let alone whether release would accomplish it more quickly or effectively.

### 3.   The Defendant Has Not Identified a Compelling Reason for a "Temporary" Release of Unspecified Duration

The defendant's brief contains ones citation to 18 U.SC. §3142(i) and the bald assertion that the Court can consider his temporary release.   New Brief at 6.   If the defendant had filed a stand-alone brief for "temporary release" that contained only what is in the first full paragraph of page 6, it would not be sufficient to warrant such release or even a hearing.   If the Court does reopen the detention hearing, it should limit it solely to § 3142(f) and *not* to section 3142(i): nothing in the defendant's brief justifies temporary release and the defendant should articulate a basis for relief under 3142(i) before being entitled to a hearing on it.

There are other grounds to deny any motion for release under § 3142(i).   *First*, the defendant's brief is not asking for "temporary" release at all.   His brief is asking for release on conditions for the remainder of these proceedings.   That alone should doom the request. *Bothra*, 2020 WL 2611545, at *2.   Generously construing the brief to be asking for release only until the defendant can get the necessary treatment does not help.   The brief offers no timeline, no plan for how the defendant will safely get to any appointments (it would not be safe to assume he can drive), no plan for how the defendant will pay for or obtain the care, and no information at all about whether release now would actually make the defendant worse off by upsetting the currently planned course of treatment.

*Second*, even if the release were temporary, the defendant has not articulated a compelling need for it.   The New Brief wildly asserts that "medical staff at GEO are uncaring and in many instances incompetent."   The only support for that broad-brush accusation is a

lengthy report containing findings about the separate *immigration facility* at GEO.   Nothing in

that report references the marshal's facility.   Nothing in that report is specific to the defendant's

case.   And nothing in that report has been subjected to judicial fact-finding.   Everything in this

record demonstrates that accusations that medical professionals are "uncaring" or "incompetent"

is unfair:   as the supplement admits, the defendant is scheduled to get the treatment he needs,

subject to careful COVID-19 precautions that are both prudent and necessary.

      The New Brief does not explicitly argue that the defendant should be released because of

COVID-19.   Moreover, the heading on page 9, which states in part that the defendant's

"COVID 19 status is not confirmed" is contradicted in the body of the section where it reports

that he tested positive.   Nevertheless, to the extent the defendant is arguing he should be

temporarily released because of COVID or that his care will suffer because of COVID, his

motion should still be denied.   *First* the defendant does not articulate how or why release to the

*less restrictive* procedures of a half-way house during the pandemic is somehow safer than the

*more intensive* procedures in place at his detention facility.   *Cf Lake*, 2020 WL 1852435, at *3

(denying motion where defendant "has not explained how his proposed release plan mitigates

any danger to himself (other than removing him from the GEO facility) or others of contracting

the virus over the coure of any temporary release).   *Second*, the defendant's condition is not a

COVID-19 risk factor. *Cf   United States v. Chillemi*, 2020 WL 6699497, at *3-4 (D. Ariz. Nov.

13, 2020) (denying compassionate release for defendant with keratoconus and noting that "fear

of infection" was insufficient) *Saxon v. United States*, 2020 WL 458078, at *2-3 (S.D.N.Y. Aug.

5, 2020) (denying motion for compassionate release for defendant with keratoconus, noting that

the condition is not a comorbidity of COVID-19); *United States v. Briggs*, 2020 WL 843356, at

*2-3 (W.D.N.Y. March 12, 2012) (denying request for reconsideration of detention order where defendant provided information about his keratoconus for, among other reasons, the failure to articulate the need to treatment available only outside of jailor that the condition would improve as a result of a change in custody status).   *Finally*, to the extent that it is "imperative" that the defendant have additional testing, the government has confirmed that the additional testing is scheduled to take place.   The defendant is scheduled to have a COVID test on December 7, followed by his necessary treatment on December 11.

### 4.    Conclusion

The defendant has not presented any materially new information rebutting, challenging or otherwise undermining the arguments and evidence set forth in the Government's Original Brief. He remains an experienced identity thief with the means to generate the resources necessary to make good on his explicit intention to flee.   He is still a danger to others to whom he might distribute fraudulently-obtained controlled substances, the people whose identities he stole, and the public at large.   He is being given all of the medical care to which he is constitutionally entitled while the parties await the trial date the defendant requested through prior counsel. There is no reason to reopen the ancillary issue of detention and many reasons to focus, instead,

on the substantive issues related to whether the defendant is guilty of the crimes with which he is

charged.


Respectfully submitted,

JASON R. DUNN
United States Attorney

By:   _s/ Bryan David Fields_____
Bryan David Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Bryan.Fields3@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.


                                       <u>*s/ Bryan David Fields*</u>
                                        United States Attorney's Office